## TITUS v. THE STATE.

1. CRIMINAL LAW. *Rape.* It is competent to prove the prosecutrix to have been a common prostitute.

2. SAME. And the prosecutrix may be asked, and must answer, whether she had cohabited with any other person beside the defendant about, or shortly before, the time of the alleged offense by defendant upon her, as an element which should be weighed by the jury for what it is worth, on the question of force or consent.

3. EVIDENCE. Where the object is to contradict the witness, her examination by the justice on the preliminary trial, identified by him as the testimony, and proved to have been signed by him for the witness, at her request, she being unable to write, is competent evidence, whether it is shown to her or read over to her at the time it is offered as evidence or not. The rule as to proof of letters written by the witness has no application in this case.

Cases cited: Reid v. Williams, 5 Sneed, 580; Nelson v. State, 2 Swan, 237.

---

FROM LAUDERDALE.

---

Appeal from the Circuit Court. THOS. J. FLIPPIN, Judge.

LYNN & OLDHAM for complainant.

ATTORNEY-GENERAL HEISKELL for the State.

FREEMAN, J., delivered the opinion of the court.

Titus was indicted in the Circuit Court of Lauderdale county for a rape on Caroline Kirkpatrick. He was convicted and sentenced to thirty years imprisonment in the penitentiary.

The proof shows the prosecutrix, Caroline Kirk-patrick, to have been a common prostitute, evidently of the coarser grade of her class.

On the trial the counsel for the defense asked the prosecutrix "whether or not she had had sexual inter-course with any other persons besides the defendant about or shortly before the time of the alleged offense by defendant upon her." The counsel also proposed to prove by said witness that at, and about, and shortly before the alleged offense, she, the prosecutrix, had had frequent sexual intercourse with various and divers men, both of which propositions were overruled by the court.  This was error.

The testimony was competent to go to the jury, as furnishing an element tending to show, or, at any rate, which should have been fairly left to the jury to be weighed for what it was deemed worth, on the question of whether the intercourse had been forcible and against her will, or had been by her consent to the act.

The rules which have been established with reference to the admissibility of testimony to prove the facts at issue between the parties have been well said to be "founded in the philosophy of nature, in the truths of history, and in the experience of common life": 1 Greenl. on Evidence, sec. 584.

It would be absurd, and shock our sense of truth, for any man to affirm that there was not a much greater probability in favor of the proposition that a common prostitute had yielded her assent to sexual intercourse than in the case of the virgin of uncon-

taminated purity. All will readily assent to the proposition that she who followed prostitution as a trade would not be so likely to depart from her degraded habit, and resist an offer for indulgence of illicit vice, as would the woman of perfect purity, whose every instinct would prompt her to revolt at the thought of such a liberty. Yet the principle which would exclude the testimony offered must necessarily be based on the idea, either that no such difference exists, or that this element, on which every one would necessarily rely in the formation of an opinion on the question of consent as of great weight, shall be disregarded in such an investigation in court, where the highest object should be the ascertainment of truth, by all means fairly tending to its development. We are aware there has been much conflict on this question, both in decisions and elementary writers, but after careful reflection we think the rule most conducive to the attainment of truth in such cases is, to allow the question to be asked and answered by the witness. In this we agree with and adopt, in addition to what we have said above, the language of Mr. Justice Cowan, in the case of the *People* v. *Abbott*, 19 Wend. R., 195, that " any fact tending to the inference that there was not the utmost reluctance, and the utmost resistance, is always received, not as conclusive, but as throwing distrust upon the assumption that there was a real absence of assent. A mixed case will not do, the connection must be absolutely against the will, and are we to be told that previous prostitution shall not make one among those circumstances which raise-

a doubt of assent; that the triers should be advised to make no distinction in their minds between the virgin and a tenant of the stew; between one who would prefer death to pollution, and another who, incited by lust and lucre, daily offers her person to the indiscriminate embraces of the other sex? And how, is the latter case to be made out? How more directly and satisfactorily than by an examination of the prosecutrix herself."

We deem this reasoning unanswerable on the question. We may add, that while the cases generally agree that you may prove the prosecutrix to be a common prostitute, and we think the argument of Mr. Justice Cowan in the above cases eminently sound, that to admit proof of the fact, or of general reputation, to prove the fact of being a prostitute, and at the same time refuse to allow proof of the facts that show her to be such, is, to say the least of it, not reconcilable with sound logic.

The only other ground on which it might have been urged that the witness was not bound to answer is the one formerly considered doubtful, and so suggested to be by McKinney, Judge, in *Reid* v. *Williams,* 5 Sneed, 580, as to whether a witness can be compelled to answer a question to his own disgrace. The modern authorities settle the question that a witness can claim no such privilege, in accordance with what was the view of Mr. Starkie, in his work on evidence, 186–87, though the question had not been definitely settled at that time by adjudication : See later authorities in note to Sharwood's Starkie, p. 1871. The

witness, however, did not claim to be exempted from answering in this case, therefore this ground of objection need not be further considered.

We held in accordance with the views expressed in this opinion on the main question, in at least one case, at Knoxville, at December Special Term, where the action was by the female for seduction. The principle as to admissibility of testimony is the same as in this case.

Another objection is presented to the action of the Circuit Court on the trial in this case. It was proposed to prove a contradiction between the statements made by the witness on her examination in court and her examination before the committing magistrate on the trial before him. To do this the examination, as taken by the justice of the peace, was tendered and identified by him as the testimony, and that he signed it for her at her request, she being unable to write, we presume. This was ruled out by the judge, on the ground that it was not shown to or read over by the prosecutrix, as we understand it, at the time offered. We hold that in this there was error.

We do not think the rule applicable to the proof of letters written by the witness has any application to this case. There the letter must be shown to the witness, and he permitted to examine it. This, however, is for the purpose of identification, and that he may have his attention called to the particular letter, and thus his memory refreshed.

This rule is one applicable in practice to the case

where the contents of the letter are to be put in evidence in proof of the facts therein contained. But here the only object is to show a contradiction to affect the credit of the witness, not to show that the facts stated in the paper are true. The law requires that the magistrate shall take down the testimony. It is a sworn statement made by her in the same case, on sound principle; it is the best evidence of what she did say, as being written down, by an officer in the performance of his duty, and assented to by her at the time. If you can, as is the settled rule, not only show that a witness has sworn differently at another time, but has even made different statements, not under oath, by calling his attention to the person and time, or place, for the purpose of contradiction, it certainly ought to be admissible to introduce a higher class of evidence, to-wit: a writing to show such contradiction.

We need not discuss this question, however, or examine the ground of contra views expressed by decisions, as our own court has settled the question in favor of the view we have expressed in the case of *Nelson* v. *The State*, 2 Swan, 237. The rule there laid down we think sound, and adhere to it.

Without expressing any opinion in the facts of the case, it suffices to say that for the errors pointed out the case must be reversed and remanded for a new trial.