Benstine *v.* The State.

2L 169
5L 732

JOSEPH BENSTINE *v.* THE STATE.

CRIMINAL LAW. *Rape. Evidence.* Upon a trial for rape it is competent for the defendant to prove any particular acts of unchastity of the injured female, and this proof may be made by her or by other witnesses.

FROM SHELBY.

Appeal in error from the Criminal Court of Shelby County. J. E. R. RAY, J.

L. B. HORRIGAN and L. E. WRIGHT for Benstine.

ATTORNEY-GENERAL LEA for the State.

McFARLAND, J., delivered the opinion of the court.

The prisoner has been convicted in the criminal court of Shelby county, of the crime of rape upon Annie Dugan. The jury decline to commute the punishment. A new trial was moved for and refused, and the judgment of death pronounced, from which the prisoner has appealed in error.

The age of Annie Dugan is not shown, but from various circumstances appearing in the record, it is clearly to be inferred that she was quite young. She had been an inmate of an orphan asylum, and from thence came to the house of the defendant in the city of Memphis, and remained there as a servant some fourteen months, and until the commission of the alleged rape on the 22d of May, 1877.

The prisoner, as he stated to the jury below, is a German, fifty-seven years of age, and, as we gather from the record, was a merchant.

The substance of Annie Dugan's testimony, without going into detail, is, that on the morning of the 22d of May, 1877, about daylight, the prisoner came to her bed and got into the bed before she awoke; that she cried and begged him to go away, but he struck her one or more blows in the side, and compelled her through fear to keep quiet, and then forcibly had carnal knowledge of her. She states that the bed of the prisoner, in which his wife then was sleeping, was in an adjoining room only a few feet from her bed, (as shown by other testimony, only about nine feet), the rooms being connected by a glass door. Another family were sleeping in within some nine feet of her bed, separated, however, by a thin plank partition. She says her failure to make an outcry was through fear. She states that she told the prisoner's wife of the occurrence early next morning, who replied that she was sick, and could not be " bothered " about it. She left the prisoner's home the same morning, going to the house of Mrs. Schwab, where her sister lived, and told Mrs. Schwab her complaint, and substantially the details of the occurrence. A physician was at once called, who proves that he made an examination and found the female organs swollen and inflamed, and from this and other particulars which he details, gives it as his opinion that some male person had recently before had sexual intercouse with her.

Mrs. Schwab was called, and corroborated Annie

Dugan, as to the fact of the complaint made to her and the particulars thereof.

This was the case for the State.

The defendant's counsel sought by cross-examination and other testimony to break the force of the testimony of the principal witness for the State, without avail in the Court below.

Several questions have been presented as grounds for reversal and argued with great earnestness and ability, the most important of which we notice first.

On cross-examination, Annie Dugan was asked if any one ever had sexual intercourse with her previous to the time of the alleged rape, and she replied in the negative.

Edward DeVere, a witness for the defendant, was asked by defendant's counsel if he had observed Annie Dugan do any indecent act, or if he knew of anything done by her not virtuous in its character. An objection of the Attorney-General to this question was sustained, and thereupon the defendant's counsel stated to the court what they proposed to prove by this witness and other witnesses then in court, and desired to ask witness if he knew of any acts of indecency and illicit intercourse upon the part of Annie Dugan with persons other than the defendant, said acts being during the time DeVere was boarding at the prisoner's house, and between that time and the alleged rape. This embraces a period of some months recently before the alleged rape.

The court sustained the objection, ruling that no specific acts of indecency or illicit intercourse with

other persons could be shown by the defendant, but that he might if he chose attack her general character for chastity. To this ruling the defendant excepted.

It is argued by the Attorney-General that the question as to the admissibility of the proposed testimony was not fairly made, inasmuch as the question actually propounded to the witness was not as to the illicit intercourse, but only as to acts of indecency, and that the question as to previous illicit intercourse was not actually propounded to the witness. But we must take the proposition of the defendant's counsel to have been made in good faith, and as the court distinctly ruled that no previous acts of illicit intercourse could be proven, it was not necessary to formally propound the question to the witness.

The question presented is one upon which there is conflict of authority. The ancient rule was in accordance with the holding of the judge below. The rule is so laid down by Mr. Greenleaf. vol. 3, sec. 214, probably, as has been said, derived from the English cases of *Rex* v. *Hodgson* and *Rex* v. *Aspinwall,* and it has been followed in many instances. But these authorities were reviewed by Mr. Justice Cowan, in *The People* v. *Abbott,* 19 Wendell, 194, and a different rule established, to-wit, that previous intercourse with other persons may be shown, as bearing directly upon one of the principal questions at issue, that is, whether the intercourse was by force or with consent of the injured female; and this for the reason that no impartial mind can resist the conclusion that a female who had been in the recent habit of illicit

intercourse with others will not be so likely to resist as one who is spotless and pure.

This court, at its April term, 1874, at this place, in the case of *Christopher Titus* v. *The State,* took this view of the question, and Judge Freeman delivering the opinion, adopted the language of Mr. Justice Cowan in the above named case.

In the Titus case the injured female was asked upon cross-examination, whether she had recently before had sexual intercourse with any other person than the defendant. The question was objected to and the objection sustained, and for this error the judgment was reversed.

The only distinction between that case and the present is, that in the present case the question was asked the witness Annie Dugan and answered in the negative, and the question here is, whether the facts may be proved by other witnesses. If the previous illicit intercourse between the injured female and other persons be regarded as facts collateral to the main issue, then it might be legitimate to propound these questions to the female herself, under the latitude allowed in cross-examination for the purpose of testing the credibility of the witness, and yet it not be legit·imate to prove the intercourse by other witnesses, as in that view her answer upon collateral questions would be conclusive; but it is manifest from the cases referred to, that this is not regarded as a mere cross-examination of the witness as to the collateral facts, but it is regarded as testimony as to the facts bearing directly upon the issue.

The authorities all agree that the want of chastity of the injured female is material. The difference is, that one class of authorities hold that this want of chastity can only be shown by proof of her general bad character in that respect, while the others hold that particular acts may be proven.

If the facts sought to be proven either upon the cross-examination of the injured female or by other witnesses are such as do not bear upon the issue, but tend only to disgrace the female, the testimony ought to be rejected, and it may be a matter of doubt whether a previous act or acts of illicit intercourse upon the part of the injured female committed at a remote period of her life ought to be admitted, inasmuch as such facts might be true, and yet her subsequent life may have fully established her claim to virtue. In such case, to disclose the previous acts might tend only to expose her to disgrace, without throwing any material light upon the issue involved. But while the injured female ought to be protected as far as possible from disgrace, on the other hand these considerations ought not exclude evidence bearing directly upon the issue, for defendant's rights ought to be equally protected. The crime of rape is one hard to disprove, and experience has shown that where the charge rests upon the testimony of the injured female alone, there is sometimes danger of unjust conviction, and defendants ought not to be unjustly exposed to this danger from fear of exposing the injured female to disgrace.

To the position that the character of the injured

female may be proven, it may be replied that her previous acts of illicit intercourse may be unknown to the public, and her general reputation may be good, snd yet her total want of virtue may be shown by proving the facts which if known would totally destroy her character. In the Titus case the character of the prosecutrix was shown. It appeared that she was a prostitute, yet this was held not to be sufficient to deprive the defendant of the 'right to prove particular acts of illicit intercourse. These facts are material, as they bear upon the question of consent, and may in some cases tend to explain or account for the condition of the injured female immediately after the alleged rape, and it may also bear upon the credibility of the principal witness.

This view of law is supported by the case of *The People* v. *Ransom*, 6 California, and to some extent by the case of *Shurman* v. *The State*, 69 Illinois. It is true that in these cases, as in the case of Titus, there were strong circumstances against the truth of the charge, but we do not see that this changes the principle.

As the judgment must for this reason be reversed, it is unnecessary to notice the other questions, except such as are likely to again arise upon another trial.

The point was made in the court below that Annie Dugan should not have been allowed to give the *details* of the complaint which she made to Mrs. Schwab, and that Mrs. Schwab should not have been allowed to prove the details of the complaint, the position being that these witnesses should only have been

allowed to prove the *facts* that complaint was made, but not the details thereof.

The question was directly decided in the case of *Phillips* v. *The State*, 9 Hum., 246, and there was no error in overruling the objection.

The criticisms upon the charge we think are not substantial.

We have been strongly urged by the prisoner's counsel to express our opinion upon the facts. This, however, we decline to do. The charge is one of grave and serious import, and must be plainly submitted to a jury, when all legitimate evidence has been heard

Let the judgment be reversed and a new trial awarded.